Approved: *[signature]*                                    **ORIGINAL**
         MATHEW S. ANDREWS
         Assistant United States Attorney

Before:  THE HONORABLE JUDITH C. McCARTHY
         United States Magistrate Judge
         Southern District of New York

---------------------------------- X   19 mag 9705

UNITED STATES OF AMERICA              :   **SEALED COMPLAINT**

      - v. -                        :   Violations of 18 U.S.C.
                                          :   § 371

JARED MILLER-WHITE,                   :   COUNTY OF OFFENSE:
                     Defendant.  :   WESTCHESTER

---------------------------------- X

SOUTHERN DISTRICT OF NEW YORK, ss.:

      GREG HOROWITZ, being duly sworn, deposes and says that he is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and charges as follows:

COUNT ONE
(Conspiracy to Commit Firearms Trafficking)

      1.    From at least in or about April 2019 up to and including the present, in the Southern District of New York and elsewhere, JARED MILLER-WHITE, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, trafficking in firearms in violation of Title 18, United States Code, Section 922(a)(1)(A).

      2.    It was a part and object of the conspiracy that JARED MILLER-WHITE, the defendant, and others known and unknown, not being licensed importers, licensed manufacturers, and licensed dealers of firearms within the meaning of Chapter 44, Title 18, United States Code, would and did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business would and did ship, transport, and receive firearms in interstate and foreign commerce, in violation of

Title 18, United States Code, Section 922(a)(1)(A).

## Overt Acts

3.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

    a.   On or about July 22, 2019, JARED MILLER-WHITE, the defendant, travelled by bus from North Carolina to Yonkers, New York with three firearms.

(Title 18, United States Code, Section 371.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.   I am a Special Agent with the ATF, and I have been involved in the investigation of the above-described offense. I am familiar with the facts and circumstances set forth below based on my review of pertinent documents and recordings, and from my conversations with law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## The Buys from Coconspirator-1 ("CC-1")

5.   Based upon my conversations with a detective from the Yonkers Police Department ("Detective-1"), I have learned, among other things, the following:

    a.   In or about April 2019, a confidential informant ("the CI") told Detective-1, in sum and substance, that an individual, CC-1, had offered to sell the CI a firearm.[1] CC-1 told the CI to contact him if the CI was interested in

---

[1] The CI was arrested on federal drug charges. The CI began cooperating with DEA and YPD in the hopes of receiving leniency at sentencing. He received a sentence of time-served and is now cooperating with DEA and YPD in return for financial compensation.

conducting the purchase. Detective-1 directed the CI to meet with CC-1 to purchase the firearm.

        b.    Thereafter, on or about April 18, 2019, the CI contacted CC-1 and told him that he/she wanted to meet.

        c.    The next day, on or about April 19, 2019, the CI and CC-1 met at a bodega located on Nepperhan Avenue in Yonkers, New York. The CI recorded the meeting, and YPD officers conducted surveillance. During the meeting, the CI gave CC-1 $700 in pre-marked bills and, in exchange, CC-1 handed the CI a .45 caliber pistol.[2] CC-1 then told the CI, in sum and substance, that he has a supplier located in North Carolina and that he could sell the CI additional firearms.

        d.    A few weeks later, on or about April 28, 2019, CC-1 and the CI spoke to each other over the phone. The CI recorded the conversation. During the call, CC-1 stated, in sum and substance, that he was back in New York and that he had another .45 caliber pistol for sale for $1,000. The CI agreed to purchase the pistol. During a subsequent conversation later the same day, CC-1 told the CI to meet him at in a parking lot on Ravine Avenue in Yonkers, New York.

        e.    Later, on or about April 28, 2019, the CI arrived at the agreed upon address. YPD and ATF conducted surveillance and the CI recorded the meeting. CC-1 entered the car in which the CI was traveling. CC-1 handed the CI a .45 caliber pistol and, in exchange, the CI handed CC-1 $1,000 in pre-marked bills. After the exchange, CC-1 exited the car and entered a house across the street from the agreed upon address. CC-1 then returned with ammunition for the .45 caliber pistol and told the CI, in sum and substance, that he was going back to North Carolina to purchase more firearms for sale. The CI agreed to purchase another firearm.

        f.    On or about May 5, 2019, CC-1 and the CI spoke to each other over the phone. The CI recorded the conversation. During the call, CC-1 stated, in sum and substance, that he needed $200 from the CI to pay for his return from North Carolina to New York. CC-1 directed the CI to send the money to JARED MILLER-WHITE, the defendant. At the direction of law

---

[2] The CI provided the firearms purchased from JARED MILLER-WHITE, the defendant, CC-1, and CC-2 to YPD and ATF officers after each controlled buy.

3

enforcement, the CI organized the money to be wired to MILLER-WHITE via Western Union that same day.

    g. On or about May 11, 2019, CC-1 spoke with the CI on FaceTime. The CI recorded the conversation. CC-1 was visible to the CI during the call, and showed the CI several firearms. CC-1 additionally told the CI, in sum and substance, that one of the firearms was fully automatic. CC-1 told the CI that when he returned to New York, he would sell several of the firearms to the CI.

    h. A few days later, on or about May 14, 2019, CC-1 spoke with the CI over the phone. The CI recorded the conversation. During the recorded conversation, CC-1 told the CI, in sum and substance, that he was selling two AR-15 rifles, one of which was fully automatic, for $5,300. The CI agreed to purchase the firearms.

    i. That same day, CC-1 and the CI met at an address on Oliver Avenue in Yonkers, New York. The CI recorded the meeting, and YPD conducted surveillance. When the CI arrived at the location, CC-1 withdrew an object covered in a blanket from the passenger seat of a 2013 Nissan Altima parked at the location. CC-1 then entered the CI's car. CC-1 opened the blanket, which contained two AR-15 rifles. CC-1 then said, in sum and substance, that he had scratched the serial number off one of the rifles. The CI handed CC-1 $5,500 in exchange for the rifles, and CC-1 told the CI, in sum and substance, that he can get the CI whatever firearms the CI wants.

  6. Based on my conversations with a detective from New York Police Department ("NYPD"), I learned that on or about June 25, 2019, CC-1 was arrested for intentional murder, manslaughter, and criminal possession of a weapon. He was subsequently indicted by a New York state grand jury on the same charges. Those charges are currently pending.

<u>The Buys from JARED MILLER-WHITE, the Defendant</u>

  7. Based upon my conversations with Detective-1 and my personal investigation of this matter, I have learned, among other things, the following:

    a. On or about June 27, 2019, the CI received a call from an individual, later identified as JARED MILLER-WHITE, the defendant. MILLER-WHITE identified himself as CC-1's "boy."

4

Before the two could communicate further, however, the call was disconnected by what appeared to be bad service.

        b. The next day, on or about June 28, 2019, MILLER-WHITE contacted the CI again. MILLER-WHITE stated, in sum and substance, that he could get additional guns for the CI and that the guns that CC-1 had provided the CI earlier had come from him. MILLER-WHITE then discussed pricing with the CI for pistols and revolvers.

        c. Thereafter, over the next approximate month, MILLER-WHITE and the CI communicated with each other several times over the phone. In each of these conversations they discussed MILLER-WHITE selling guns to the CI.

        d. On or about July 22, 2019, MILLER-WHITE called the CI and told the CI, in sum and substance, that he planned to travel to New York to sell guns. MILLER-WHITE requested that the CI book him a hotel room. The CI agreed and asked MILLER-WHITE to text the CI his name so the CI could make the hotel reservation. Later that same day, MILLER-WHITE texted the CI a name: "Jared Miller White." The CI then booked a room at a hotel in Yonkers, New York (the "Hotel") for the next day under the name of Jared Miller-White.

        e. The next day, on or about July 23, 2019, Detective-1 conducted surveillance at the Hotel. Detective-1 identified MILLER-WHITE exit a vehicle and approach the front desk of the Hotel. A few minutes later, MILLER-WHITE contacted the CI and told the CI, in sum and substance, that he was at the Hotel and having trouble checking in. After a brief back-and-forth, MILLER-WHITE confirmed that he had successfully checked in.

        f. Later that same day, MILLER-WHITE and the CI met in the parking lot of the Hotel. Members of the YPD and the ATF conducted surveillance, and the meeting was audio recorded. MILLER-WHITE entered the CI's car, handed the CI a blue bag, and told the CI that the bag contained guns. The CI then handed him $2,800, and told him that he/she would return to the Hotel parking lot after he/she stored the weapons. The CI afterwards left the parking lot, and met with members of the YPD and ATF. The CI gave them the blue bag. Inside the bag were, among other things, three pistols, a receipt from what appeared to be a gas station in North Carolina, and three receipts for bus tickets.

5

g.    Later that same day, MILLER-WHITE and the CI spoke to each other over the phone and agreed to meet in the parking lot of the Hotel once again. The CI returned to the parking lot and was met by MILLER-WHITE and another individual ("CC-2"). MILLER-WHITE and CC-2 entered the CI's vehicle. MILLER-WHITE stated, in sum and substance, that CC-2 could supply the CI with additional firearms. MILLER-WHITE additionally added that he and CC-2 could supply the CI with "ice." CC-2 then stated, in sum and substance, that they know someone who could get bags of the substance and could bring it up during the next deal. The CI requested a sample to make sure that the "ice" was of sufficient quality to sell. Based on my training and experience, I know that "ice" is a street name for methamphetamine.

h.    On or about August 7, 2019, the CI received calls and texts from MILLER-WHITE. The calls and texts were recorded. MILLER-WHITE stated, in sum and substance, that he was taking the bus up to New York to sell the CI additional firearms, and texted the CI pictures of several pistols. MILLER-WHITE requested that the CI book him a hotel room overnight. The CI agreed and booked MILLER-WHITE a room at the Hotel.

i.    The next day, on or about August 8, 2019, the CI met with MILLER-WHITE at the Hotel. Members of ATF and YPD conducted surveillance of the meeting, and it was audio recorded. MILLER-WHITE entered the backseat of the CI's vehicle with a red backpack. MILLER-WHITE removed a white pillowcase from the backpack containing several items and handed them to the CI. The CI opened the pillowcase and inside were three pistols. The CI subsequently gave MILLER-WHITE $3,100 for the firearms.

j.    On or about August 12, 2019, the CI received calls and texts from MILLER-WHITE. The calls and texts were recorded. MILLER-WHITE stated, in sum and substance, that he had a sample of methamphetamine for the CI and texted a picture of a white substance.

8.    Based upon my conversations with a second detective from the Yonkers Police Department ("Detective-2") and my personal investigation of this matter, I have learned, among other things, the following:

a.    On or about August 26, 2019, the CI received calls and texts from JARED MILLER-WHITE, the defendant. The calls and texts were recorded. MILLER-WHITE stated, in sum and

6

substance, that he was going to take the bus up to New York to sell the CI additional firearms on a later date. MILLER-WHITE requested that the CI provide a $500 advance for the firearms. The CI agreed and arranged for $500 to be wired via Western Union to "JARED MILLER-WHITE."

    b. On or about September 10, 2019, the CI received calls and texts from MILLER-WHITE. The calls and texts were recorded. MILLER-WHITE stated, in sum and substance, that he was taking the bus up to New York the next day to sell the CI additional firearms, and texted the CI pictures of several pistols and rifles. MILLER-WHITE requested that the CI book him a hotel room overnight. The CI agreed and booked MILLER-WHITE a room at the Hotel.

    c. The next day, on or about September 11, 2019, the CI met with MILLER-WHITE at the Hotel. Members of ATF and YPD conducted surveillance of the meeting, and it was audio recorded. MILLER-WHITE entered the backseat of the CI's vehicle with a beige-colored duffel bag. MILLER-WHITE removed from the duffel bag an AR-style rifle, two pistols, and a revolver. The CI additionally observed that MILLER-WHITE had a pistol tucked into his waistband. Although the pistol was not part of the deal, MILLER-WHITE agreed to supply it to the CI for an additional sum of money. The CI gave MILLER-WHITE a total of $4,700 for the firearms in the duffel bag and agreed to provide an additional $500 for the pistol. MILLER-WHITE then went back into the Hotel and returned to the CI's vehicle. MILLER-WHITE handed the CI a clear plastic bag containing a white, rocky substance through the window of the CI's vehicle and then returned to the Hotel.

    d. Thereafter, the CI provided the firearms and the clear plastic bag containing the white, rocky substance to members of the ATF and YPD. A member of the YPD conducted a field test of the substance. It tested positive for methamphetamine and weighed approximately 3 ½ grams.

    e. Approximately a week later, on September 18, 2019, the CI received calls and texts from MILLER-WHITE. The calls and texts were recorded. The CI stated, in sum and substance, that the sample of methamphetamine was good and that he/she would let MILLER-WHITE know if he/she wanted more. MILLER-WHITE responded, in sum and substance, that he would let his people know and that he had "10 ready." Based on my training and experience, I believe that "10" refers to 10 pounds of methamphetamine.

       f.   A few weeks later, on or about October 10, 2019, the CI received calls and texts from MILLER-WHITE. The calls and texts were recorded. MILLER-WHITE stated, in sum and substance, that he would be sending up CC-2 from North Carolina to deliver more firearms.

      9.   Based on my review of records from the Department of Transportation, I know that there is a driver's license issued to JARED MILLER-WHITE, the defendant, in Charlotte North, Carolina. Based on my review of this driver's license, I know that the photo matches the individual who sold the CI firearms during each of the above-described buys.

      WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of JARED MILLER-WHITE, the defendant, and that they be imprisoned or bailed, as the case may be.

*[signature]*
Greg Horowitz
Special Agent
BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES

Sworn to before me this
17th day of October, 2019

*[signature]*
THE HONORABLE JUDITH C. McCARTHY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

8